**J.B. GILLELAND, D.O.,**
**Plaintiff–Appellant,**

v.

**Richard SCHANHALS, et al.,**
**Defendants–Appellees.**

No. 01–1839.

United States Court of Appeals,
Sixth Circuit.

Jan. 7, 2003.

Before KENNEDY and GILMAN, Circuit Judges; and SARGUS, District Judge.*

## OPINION

GILMAN, Circuit Judge.

Douglas Carson, Richard Schanhals, and J.B. Gilleland are the sole shareholders of MedTrak Systems, Inc. MedTrak Systems is the licensee of the MedTrak Program, a software program that tracks medical patient care. Micom Systems of Michigan, Inc., a corporation owned solely by Carson and Schanhals, is the licensor. In January of 1994, Micom and MedTrak Systems entered into a license agreement providing that "Micom hereby grants to MedTrak an exclusive license to use [the MedTrak program].... Title to all intellectual property rights [in the MedTrak Program] ... is, and shall remain, in Micom." Carson, Schanhals, and Gilleland adopted nearly identical language in a 1997 agreement that completely superseded the 1994 agreement. The 1997 agreement, however, stated that "Micom *and Gilleland* hereby grant to MedTrak an exclusive license to use and license the [MedTrak Program]" (emphasis added).

Gilleland filed a complaint on March 31, 2000, asserting state-law claims against Carson and Schanhals, among others, and seeking a declaratory judgment that Gilleland is the co-owner of the copyright to the MedTrak Program. Carson and Schanhals moved for summary judgment on the copyright claim, which the district court granted. Gilleland has timely appealed, contending that the district court erred in (1) applying § 204(a) of the Copyright Act, (2) misconstruing the language in the two licensing agreements regarding the par-

ties' intent to transfer ownership to Micom, (3) granting summary judgment based on ambiguous agreements that contravened the intent of the parties, and (4) considering Schanhals's affidavit. For the reasons set forth below, we AFFIRM the judgment of the district court.

## I. BACKGROUND

### A. Factual background

Micom originally sold computer software programs to law firms throughout the country. In the early 1990s, however, Carson and Schanhals decided to expand the scope of Micom's business. They contacted Gilleland to discuss the prospect of marketing a computer program for occupational health and urgent care clinics.

Carson, Schanhals, and Gilleland agreed in 1991 to form a new company, MedTrak Systems, to market the MedTrak Program. They executed an agreement later that year, pursuant to which each of them contributed $75,000 to fund MedTrak Systems. As part of the agreement, they became equal shareholders.

On January 7, 1994, Micom and MedTrak Systems entered into an agreement granting MedTrak Systems an exclusive license to use the MedTrak Program for five years, with MedTrak Systems having an option to purchase the software at the expiration of the agreement. The licensing agreement provided in pertinent part as follows:

Micom and ... Gilleland have developed the MedTrak [Program] ("Software') for use in the medical field which MedTrak [Systems] desires to market to the medical field.

Micom hereby grants to MedTrak [Systems] an exclusive license to use the Soft-

* The Honorable Edmund A. Sargus Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

ware.... The license granted hereby transfers neither title nor any proprietary rights to the Software. Title to all intellectual property rights, including patent, trademark, copyright, and trade secret rights ... is, and shall remain, in Micom until such time, if ever, that the Software is sold. Gilleland signed this agreement as the Vice–President of MedTrak Systems.

Micom and MedTrak Systems entered into a nearly identical licensing agreement on August 8, 1997. The 1997 agreement stated that it "supersedes all prior agreements and understanding[s] ... with respect to the [MedTrak Program]." Aside from lengthening the term of MedTrak System's license from 5 to 15 years, the two most significant differences between the 1994 and 1997 agreements was that (1) Gilleland signed the 1997 agreement in his individual capacity in addition to signing as the Vice President of MedTrak Systems, and (2) Gilleland was listed as a co-grantor of the license along with Micom.

### B. Procedural background

The relationship between the parties deteriorated sometime after they executed the 1997 agreement. Unable to resolve their differences, Gilleland sued Carson, Schanhals, MedTrak Systems, and Micom, asserting various state-law claims and seeking a declaration that he owned an interest in the copyright in the MedTrak Program.

The defendants filed a motion for summary judgment, contending that Gilleland does not have an ownership interest in the MedTrak Program. In support of their motion, the defendants submitted the 1994 and 1997 agreements, and, in conjunction with their reply brief, the defendants submitted an affidavit by Schanhals. The Schanhals affidavit states that the parties signed the 1997 agreement because U.S. Health Works, Inc., which had entered into an agreement with MedTrak Systems to use the MedTrak Program, insisted that Gilleland acknowledge in writing that he had no *individual* ownership interest in the software. Although Gilleland filed a memorandum in opposition to the motion, he did not proffer any evidence in support of his position.

On May 25, 2001, the district court granted the defendants' motion for summary judgment on Gilleland's federal claim. It then declined to exercise pendant jurisdiction over his state-law claims. This timely appeal followed.

## II. ANALYSIS

### A. Standard of review

We review the district court's grant of summary judgment de novo. *Sperle v. Mich. Dep't of Corr.*, 297 F.3d 483, 490 (6th Cir.2002). Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). In considering such a motion, the court construes all reasonable factual inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. Defendants' motion for summary judgment

#### 1. Application of the Copyright Act to the 1997 Agreement

Section 201(d) of the Copyright Act provides that "ownership of a copyright may be transferred in whole or in part by any

means of conveyance." 17 U.S.C. § 201(d) (2002). The Copyright Act also delineates the parameters by which a party may convey a copyright: "A transfer of copyright ownership ... is not valid unless an instrument of conveyance ... is in writing and signed by the owner of the rights conveyed...." 17 U.S.C. § 204(a). These provisions accomplish "Congress's paramount goal ... of enhancing predictability and certainty of copyright ownership." *Cmty. for Creative Non–Violence v. Reid,* 490 U.S. 730, 749, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989).

So long as the parties' intent is clear, a transfer of copyright need not include any particular language. *Radio Television Espanola S.A. v. New World Entm't, Ltd.,* 183 F.3d 922, 927 (9th Cir.1999) ("No magic words must be included in a document to satisfy § 204(a)."). *Cf.* 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright, § 10.03[A][2] (Rel. 53 2000) ("As with all matters of contract law, the essence of the inquiry here is to effectuate the intent of the parties."). As such. "Section 204(a)'s requirement is not unduly burdensome. The rule is really quite simple: If the copyright holder agrees to transfer ownership to another party, that party must get the copyright holder to sign a piece of paper saying so. It doesn't have to be the Magna Carta; a one-line pro forma statement will do." *Radio Television Espanola,* 183 F.3d at 927 (internal quotation marks omitted) (ellipsis omitted).

Because the 1997 agreement by its own terms completely supersedes the 1994 agreement, we need interpret only the 1997 agreement. *See* 1997 agreement, at ¶ 6 ("This agreement constitutes the entire agreement and supersedes all prior agreements and understanding[s], both written and oral, with respect to the subject matter hereof."). Gilleland does not contend to the contrary.

The 1997 agreement is, as the district court found, ambiguous and inconsistent on its face. On the one hand, it declares that it does not transfer any rights to the MedTrak Program and that the copyright to the MedTrak Program "is, and shall remain, in Micom." On the other hand, Gilleland signed the agreement as a co-grantor, which indicates that he possessed an ownership interest in the MedTrak Program at the time he signed the agreement.

As the defendants contend and the district court found, Schanhals's affidavit clears up the apparent inconsistency. The affidavit explains that U.S. Health-Works, Inc., MedTrak's largest customer, insisted that the parties sign a new licensing agreement and that Gilleland "execute the new agreement individually, stating that he had no individual ownership interest in the software." While the 1997 agreement is not a model of clarity, the affidavit establishes the parties' intent that Gilleland, to the extent that he had previously possessed an ownership interest in the copyright of the MedTrak Program, was relinquishing such rights in the 1997 agreement. With this clarification, the 1997 agreement satisfied the Copyright Act, so long as the district court did not err in considering Schanhals's affidavit.

### 2. Schanhals's affidavit

Gilleland maintains that the district court's consideration of the affidavit was improper because it "essentially reopened the record after it had been closed." He also claims that the district court erred by considering Schanhals's affidavit because the affidavit allegedly violated the parol evidence rule and contained hearsay, conclusory statements, and information about which Schanhals had no personal knowledge.

■ Gilleland's first argument is premised on the fact that the affidavit was filed along with the defendants' reply memorandum, as opposed to accompanying their initial memorandum. But this court has explicitly approved of such filings, provided that two conditions are satisfied: (1) the affidavit responds only to the nonmoving party's opposition memorandum, and (2) the nonmoving party has an opportunity to respond. *Peters v. Lincoln Elec. Co.,* 285 F.3d 456, 476 (6th Cir.2002) (affirming the district court's consideration of an affidavit filed with a reply memorandum in support of a motion for summary judgment); *see also Fisher v. Trinova Corp.,* No. 96–3918, 1998 WL 774111, *8 (6th Cir. Oct.13, 1998) (affirming the district court's consideration of affidavits filed with a reply memorandum in support of a motion for summary judgment because the nonmoving party "had ... time available to respond to the reply-brief affidavits"). Here, there is no question that Schanhals's affidavit responded to Gilleland's memorandum opposing the motion for summary judgment. Gilleland's opposition memorandum argued that the motion should be denied because "the record is silent as to the reason why the 1997 License Agreement was entered into by the parties or why Dr. Gilleland's signature now appears but did not appear in the 1994 agreement."

In addition, Gilleland had an opportunity to respond to Schanhals's affidavit. The defendants filed the affidavit on March 30, 2001, and the district court did not issue its order granting the motion until May 21, 2001. More than seven weeks thus elapsed between the filing of the affidavit and the issuance of the order. In that time, Gilleland could have sought leave to file a response or could have filed a motion to strike the affidavit pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. He also could have filed a motion for reconsideration pursuant to Rules 59(e)

and 60(b) of the Federal Rules of Civil Procedure in light of the alleged late filing of the affidavit. Instead, Gilleland sat on his hands and did not raise the issue prior to filing this appeal. We thus conclude that there was no procedural deficiency concerning the filing of the affidavit.

■ Regarding Gilleland's challenge to the admissibility of the affidavit, we find his arguments to be without merit. Affidavits submitted in support of a motion for summary judgment must "set forth such facts as would be admissible in evidence." Fed.R.Civ.P. 56(e). Contrary to Gilleland's contentions, however, the affidavit contains no inadmissible facts. Schanhals, as the President of MedTrak, certainly had personal knowledge of U.S. Healthworks' conditions for entering into a contract with MedTrak. Moreover, the parol evidence rule does not bar the consideration of the affidavit because, under Michigan law, the parol evidence rule does not preclude the consideration of a document that "indicate[s] the actual intent of the parties where an actual ambiguity exists." *Wonderland Shopping Ctr. Venture, Ltd. P'ship v. CDC Mortgage Capital, Inc.,* 274 F.3d 1085, 1095 (6th Cir.2001) ("Michigan permits the use of extrinsic evidence to dispose of a potential ambiguity ... or to indicate the actual intent of the parties where an actual ambiguity exists.").

The affidavit similarly contains no conclusory statements. *See, e.g.,* Schanhals affidavit, at ¶ 4 ("As a condition of execution of a contract with Medtrak Systems, Inc., U.S. HealthWorks, Inc. insisted that a new licensing agreement ... be executed by all the principals. U.S. HealthWorks, Inc. also insisted that [Gilleland] execute the agreement individually, stating that he had no individual ownership interest in the software."). Finally, the affidavit does not contain hearsay statements because the

alleged motivations of U.S. HealthWorks were not submitted for the truth of the matter asserted, but rather to establish why the parties entered into the 1997 agreement.

## III.  CONCLUSION

For all of the reasons set forth above, we AFFIRM the judgment of the district court.