mitt's corporate credit manager. Gillespie testified in relevant part as follows:

Q: All right, Mr. Gillespie, we talked earlier about some contractual language in the factoring agreement called representations and warranties.... Did Dimmit & Owens rely on those representations and warranties as contained in that document?

A: We rely on those with everybody that we use as a client.

Q: Let me put it this way, if those paragraphs were removed from the factoring agreement, for instance Mr. Herdean struck those with a black pen and crossed out those paragraph [sic] ... would Dimmit & Owens had [sic] entered into a factoring relationship with Herdean Services?

A: No.

Dimmitt contends that this exchange unequivocally proves that Dimmitt relied on Herdean's misrepresentations. But given that this was the *only* evidence in the record directed toward the reliance issue, it was not clearly erroneous for the district court to reject Gillespie's testimony, which consisted only of a bald assertion concerning reliance in general, and retrospective speculation concerning reliance in this particular case. Given the extensive evidence heard by the bankruptcy judge about Dimmitt's post-breach relationship with Herdean—evidence that, in its entirety, was not linked to a theory of mitigation—it was not clear error for the district judge to find that Dimmitt did not meet its burden of proving that it relied on the Factoring Agreement.

I disagree with the majority's faulting the bankruptcy judge for failing to credit a portrait of the evidence that was not compellingly painted below and for instead finding an alternative, reasonable explanation for Dimmitt's post-breach behavior. Because I do not find that the bankruptcy judge committed clear error in finding that Dimmitt failed to prove reliance, I concur in the judgment affirming the bankruptcy court's dismissal of the adversary proceeding.

**David SUTTON, Jr. and Coleen M. Sutton, Plaintiffs–Appellants,**

v.

**UNITED STATES SMALL BUSINESS ADMINISTRATION, Defendant–Appellee.**

No. 02–1765.

United States Court of Appeals, Sixth Circuit.

Dec. 4, 2003.

David Sutton, Jr., pro se, Bloomfield Hills, MI, for Plaintiff–Appellant.

Francis L. Zebot, Asst. U.S. Attorney, U.S. Attorney's Office, Detroit, MI, for Defendant–Appellee.

Before KENNEDY and GIBBONS, Circuit Judges; and ALDRICH, District Judge.*

KENNEDY, Circuit Judge.

On March 29, 2001, plaintiffs David and Coleen Sutton ("the Suttons") filed an amended complaint against the Small Business Administration ("SBA") on the following five claims: 1) declaratory, injunctive, and monetary relief against the SBA on the ground that its foreclosure on plaintiffs' property was faulty because the SBA lacked title or interest in the property due to the mortgage having been altered without plaintiffs' authorization; 2) declaratory and monetary relief against the SBA on the ground that it denied plaintiffs, both of whom are black, equal protection of the law by not accepting their settlement offers while accepting those of white SBA borrowers; 3) injunctive relief preventing First Federal of Michigan from foreclosing on and selling plaintiffs' property on the ground that the SBA's foreclosure action and agreement to subordinate its interests to First Federal's were improper; 4) declaratory and other "agreeable" relief against the SBA on the ground that its foreclosure upon plaintiffs' proper-

* The Honorable Judge Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

ty violated both state law and the Uniform Commercial Code in that it involved a defective acknowledgment; and 5) declaratory relief against the SBA on the ground that it violated plaintiffs' due process rights by foreclosing upon plaintiffs' mortgage via Michigan's advertisement procedure without a prior hearing. Plaintiffs raise several claims of error in this appeal. For the reasons explained below, we AFFIRM the district court's award of summary judgment to the SBA on all of plaintiffs' claims.

## I. Procedural Background

SBA moved for dismissal pursuant to Federal Rule of Civil Procedure 12(c), for summary judgment, and to strike plaintiffs' jury demand. Plaintiffs filed a motion to strike, under Federal Rule of Civil Procedure 12(f), an affidavit that SBA had attached in support of its dispositive motion on the ground that it constituted perjury because it conflicted with an earlier affidavit and also moved for monetary sanctions under Federal Rule of Civil Procedure 56(g). Plaintiffs filed motions for the appointment of counsel and for a continuance, which the district court denied. The district court referred all of the remaining pre-trial proceedings to a magistrate judge. The magistrate judge's Report and Recommendation advised the district court to deny plaintiffs' motion for imposition of sanctions and to grant SBA's motion for summary judgment.[1] Plaintiffs filed objections to the Report and Recommendation. The following day, the district court issued an order accepting the Report and Recommendation, and entered a judgment denying plaintiffs' motion to strike and/or for sanctions and granting SBA's summary judgment motion. Plain-

tiffs filed a motion for reconsideration, which the district court denied. Plaintiffs appeal this judgment.

## II. Facts

The district court adopted the following facts. On June 2, 1982, the SBA and plaintiffs' Candy Manufacturing Company ("the Company") entered into a loan agreement. The Company executed and delivered to the SBA a promissory note in the principal sum of $56,280. The Company promised to pay the principal loan amount plus interest at a rate of 15⅝ percent interest over ten years with equal monthly installments of $951. At that time, plaintiffs executed and delivered to the SBA a guaranty of payment for the Company note, secured by a mortgage on their residence in Detroit, Michigan. In 1988, plaintiffs sought to buy a new home in Oakland County, Michigan; the home lay on land that was located in both Bloomfield Township and the City of West Bloomfield. Discharging the mortgage on the Detroit home, the SBA permitted plaintiffs to use the equity from the sale of that home to purchase the Oakland County home in consideration of plaintiffs providing a substitute mortgage on the new home. Plaintiffs executed the mortgage on May 26, 1988. This mortgage, recorded with the Oakland County Registrar of Deed on June 6, 1988, described the property subject to the mortgage as "LOT 228 EXCEPT THAT PART IN BLOOMFIELD TOWNSHIP."

The parties dispute the events that ensued. According to the SBA, the original recording of the mortgage was based on title work that was, in turn, based upon information that plaintiff David Sutton provided regarding the property's legal de-

---

1. Because the parties presented matters outside of the pleadings, the district court properly treated SBA's dispositive motion solely as one for summary judgment. *See* Fed.R.Civ.P. 12(c).

scription. Sometime in June of 1988, the SBA and the title company learned that the recorded mortgage incorrectly excluded the portion of the property in Bloomfield Township. In a letter dated June 17, 1988, the SBA requested the title company's president to correct the mortgage by adding the missing property. With plaintiffs' authorization, the president made the correction in the mortgage and initialed the change for them. According to plaintiffs, however, they neither had any contact with the title company nor authorized any of its representatives to change the mortgage description on their behalf. Plaintiffs contend that they first learned about the alteration of the mortgage after they had instituted a prior action.

The following facts are not in dispute. Both the Company and plaintiffs failed to make many payments under the note and guaranty, respectively. The SBA and plaintiffs reworked the loan on several occasions. Between 1990 and 1999, the SBA and plaintiffs engaged in a number of compromise settlement discussions although they never reached a settlement.

## III. Analysis

### A. Issues Requiring Review for an Abuse of Discretion

■ We review the various procedural challenges that plaintiffs raise on appeal for an abuse of discretion. *See Roberts ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d 776, 782 (6th Cir.2003) (holding that the district court's decision not to impose sanctions for a violation of Federal Rule of Civil Procedure 26(a) is reviewed for an abuse of discretion); *United States v. King*, 127 F.3d 483, 486 (6th Cir.1997) (holding that the district court's denial of a

motion for a continuance is reviewed for an abuse of discretion); *Kennedy v. City of Cleveland*, 797 F.2d 297, 305 (6th Cir.1986) (holding that the striking of a pleading under Federal Rule of Civil Procedure 12(f) is reviewed for an abuse of discretion); *Henry v. City of Detroit Manpower Dep't*, 763 F.2d 757, 760 (6th Cir.1985) (holding that the district court's denial of a motion for appointment of counsel is reviewed for an abuse of discretion). Plaintiff David Sutton[2] contends that the district court abused its discretion when it did not hold an evidentiary hearing to determine the merits of his motion for appointment of counsel under 28 U.S.C. § 1915(e)(1).[3] In particular, plaintiff asserts that the district court was unable to inquire into or set forth sufficient facts concerning plaintiff's ability to afford counsel without holding an evidentiary hearing. Yet, plaintiff has not cited and we have not found any authority requiring a district court to conduct an evidentiary hearing in ruling upon a motion for the appointment of counsel. Rather, case law suggests otherwise. *See Hauck v. Tennessee*, 872 F.2d 1025, 1989 WL 40261, at *1–2 (6th Cir. 1989) (unpublished opinion) (upholding, where no evidentiary hearing occurred, the district court's denial of prisoner's motion to proceed *in forma pauperis*); *Hartman v. United States*, 310 F.2d 447, 448 (6th Cir.1962) (holding that the district court, which did not conduct an evidentiary hearing on prisoner's motion to proceed *in forma pauperis*, was "fully justified in denying" that motion). Even if we were to generalize plaintiff's challenge to the propriety of the district court's denial of his motion for appointment of counsel, not just to the absence of an evidentiary hearing,

---

**2.** Plaintiff Coleen Sutton did not join in her husband's motions for the appointment of counsel and for a continuance.

**3.** This statutory provision states: "The court may request an attorney to represent any person unable to afford counsel."

we could not conclude that the district court abused its discretion where the district court found that plaintiff "failed to set forth sufficient facts demonstrating that he is unable to afford counsel." *See Hauck*, 1989 WL 40261, at *1–2 (observing that, "[g]enerally, a district court should grant an application to proceed *in forma pauperis* upon submission of a facially adequate affidavit of indigency," but upholding the district court's denial of the prisoner's motion because his attached affidavit did not establish his indigence) (italics added). In addition to considering plaintiff's failure to demonstrate his indigence, the district court considered the court's familiarity with the implicated issues and principles, the case's advanced procedural posture, and plaintiff's "well-drafted" response to SBA's dispositive motion.[4] *See Henry*, 763 F.2d at 760; *Merritt v. Faulkner*, 697 F.2d 761, 764 (7th Cir.1983). Clearly, the district court's denial of plaintiff David Sutton's motion to appoint counsel did not constitute a constitutional violation, as he claims.

■ Plaintiff David Sutton likewise maintains that the district court abused its discretion when it denied his motion for a continuance to obtain counsel. In denying this motion, the district court noted that it had denied plaintiff's motion for the appointment of counsel and that plaintiff "had more than sufficient time to obtain counsel on ... [his] own." In fact, before filing the continuance motion, plaintiff had proceeded in the litigation without obtaining counsel for eleven months. Plaintiff attempts to justify this delay by contending that, after eleven months, he "felt that

the truth would more likely be exposed where both sides were represented by counsel." The district court did not abuse its discretion in denying the motion.

■ Plaintiffs argue that the district court abused its discretion when it denied plaintiffs' motion for the imposition of sanctions upon SBA for its use of an allegedly perjured affidavit without holding an evidentiary hearing to determine SBA's bad faith, pursuant to Federal Rule of Civil Procedure 56(g).[5] Rule 56(g) provides:

> Should it appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to ... [Rule 56] are presented in bad faith ..., the court shall forthwith order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused the other party to incur, including reasonable attorney's fees, and ... [may adjudge] any offending party or attorney ... guilty of contempt.

Plaintiffs cite no case law mandating a district court, under Rule 56(g), to hold an evidentiary hearing to determine the bad faith of a party presenting an affidavit. The district court did not abuse its discretion when it denied plaintiffs' motion for the imposition of sanctions upon SBA without holding an evidentiary hearing into SBA's bad faith. The district court did not rely on the affidavit in granting SBA's summary judgment motion and, thus, the affidavit, even if submitted in bad faith, did

---

**4.** We note that plaintiffs moved for *in forma pauperis* status eleven months after they filed their complaint and, thus, after paying the filing fee and undertaking discovery.

**5.** We disregard plaintiffs' reliance upon 18 U.S.C. § 1621, a criminal perjury statute, as it

is inapposite to this civil action; similarly, we disregard plaintiffs' reliance upon Federal Rule of Civil Procedure 11 because plaintiff neither raised that specific objection nor complied with Rule 11's distinct requirements before the district court.

not prejudice plaintiffs.[6] *See Faberge, Inc. v. Saxony Prods., Inc.,* 605 F.2d 426, 429 (9th Cir.1979) (holding that plaintiff is not entitled to sanctions under Rule 56(g), even if defendant had submitted a particular affidavit in bad faith, because summary judgment was not based upon that affidavit); *Jaisan, Inc. v. Sullivan,* 178 F.R.D. 412, 415–16 (S.D.N.Y.1998) (surveying cases in which courts awarded Rule 56(g) sanctions "where affidavits contained perjurious or blatantly false allegations or omitted facts concerning issues central to the resolution of the case" and did not award sanctions "where a litigant's actions, even though wrongful, did not affect the disposition of the summary judgment motion"). In any event, we note that plaintiffs forfeited their right to appeal this issue when they failed to object to the magistrate judge's Report and Recommendation on this ground. *Smith v. Detroit Fed'n of Teachers, Local 231, Am. Fed'n of Teachers, AFL–CIO,* 829 F.2d 1370, 1373 (6th Cir.1987) (holding that a party preserves appellate review for "only those specific objections to the magistrate's report" that he filed with the district court); *United States v. Walters,* 638 F.2d 947, 949–50 (6th Cir.1981) (holding that a party who fails to file with the district court objections to a magistrate judge's report waives his right to appellate review of the district court judgment adopting that report).

Plaintiffs argue that the district court abused its discretion when it denied plaintiffs' motion to strike the challenged affidavit under Federal Rule of Civil Procedure 12(f). The parties dispute whether Federal Rule of Civil Procedure 12(f), which provides that "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," would permit the district court to strike the affidavit. The district court adopted the magistrate judge's finding that Rule 12(f) does not apply to an affidavit because it is not a "pleading," and that plaintiffs should have, instead, challenged the affidavit's admissibility by filing a notice of objection to it. There is much support for this construction. *See, e.g.,* Fed.R.Civ.P. 7(a); *Wimberly v. Clark Controller Co.,* 364 F.2d 225, 227 (6th Cir.1966) (observing that Rule 12(f) "specifically relates to matters to be stricken from pleadings but ... make[s] [no] provision for testing the legal sufficiency of affidavits by a motion to strike"); *York v. Ferris State Univ.,* 36 F.Supp.2d 976, 980 (W.D.Mich.1998) (holding that Rule 12(f) only applies to "pleadings," which are not affidavits); *Morgan v. Sears, Roebuck & Co.,* 700 F.Supp. 1574, 1576 (N.D.Ga.1988) (holding that, rather than filing a motion to strike an affidavit under Rule 12(f), one should challenge its admissibility by filing a notice of objection to it, and noting that the district court will consider the objection to the affidavit's admissibility in ruling on the summary judgment motion's merits). *But see Gilleland v. Schanhals,* 55 Fed.Appx. 257, 260 (6th Cir.2003) (unpublished opinion) (suggesting that plaintiff could have filed a motion to strike an affidavit attached to defendant's reply memorandum in support of summary judgment under Rule 12(f)). We need not resolve this dispute because plaintiffs suffered no prejudice from the district court's refusal to strike the affidavit under Rule 12(f). Rather, plaintiffs, in

---

**6.** Plaintiffs erroneously insist that the bare existence of a perjured affidavit defeats summary judgment; however, where the district court's disposition of the summary judgment motion does not depend upon the allegedly perjurious affidavit, no "genuine issue of material fact" exists. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

effect, received the benefit of their challenge to its admissibility. *See Wimberly*, 364 F.2d at 227 (holding that, at best, the motion to strike the affidavit attached to defendants' motion to dismiss under Rule 12(f) raised an issue as to the affidavit's admissibility-an issue present in every case where one filed an affidavit under Rule 56–, and noting that the court has discretion to disregard inadmissible or incompetent evidence). The district court's disposition of SBA's summary judgment motion did not rely upon the challenged affidavit. In fact, the SBA ultimately withdrew from its summary judgment motion the argument that the affidavit supported-that plaintiffs had authorized the amendment of the original mortgage.

B. Issues Requiring *De Novo* Review

■ On appeal, plaintiffs raise various questions of law that we review *de novo*. *Peabody Coal Co. v. Odom*, 342 F.3d 486, 489 (6th Cir.2003). Plaintiffs contend that the district court committed reversible error when, according to plaintiffs, it designated a magistrate judge to determine a dispositive summary judgment motion in violation of 28 U.S.C. § 636(b)(1)(A).[7] Plaintiffs did not preserve this issue for appeal as plaintiffs failed to object to the district court's designation of a magistrate judge either at the time that the district court did so or as an objection to the magistrate judge's Report and Recommendation; rather, plaintiffs first raised this issue only after the district court issued its judgment adopting the Report and Recommendation. In any event, plaintiffs' claim lacks merit. Section 636(b)(1)(A) provides that "a judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion for ... judgment on the pleadings ... [or] for summary judgment." However, § 636(b)(1)(B) permits a judge to designate a magistrate judge to conduct hearings and to submit to the district court "proposed findings of fact and recommendations for the disposition, ... [by the district court], of any motion excepted in subparagraph (A)." Here, the district court relied on § 636(b)(1)(B), not § 636(b)(1)(A), to refer all of the pre-trial proceedings-including SBA's dispositive motion, which is "excepted in subparagraph (A)"-to the magistrate judge; in other words, the magistrate judge did not "hear and determine" the pre-trial proceedings, but, rather, submitted "*proposed* findings of fact and recommendations" for their disposition. 28 U.S.C. § 636(b)(1)(B) (emphasis added). Plaintiffs' unwitting concession that the district court reviewed the parties' objections to the report under a *de novo* standard of review-rather than a clearly erroneous or contrary to law standard-as well as the magistrate judge's issuance of a "Report and Recommendation"-rather than a judgment-evidence this.[8] *See* 28 U.S.C. § 636(b)(1)(A) (providing that the district court "may reconsider any pretrial matter under this subparagraph (A)" where the magistrate's order is "clearly erroneous or contrary to law"); *United States v. Raddatz*, 447 U.S. 667, 673, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) (holding that a district court reviews a magistrate judge's *determination* of non-dispositive motions pursuant to subparagraph (A) un-

---

7. We disregard plaintiffs' argument that the district court also violated Federal Rule of Civil Procedure 53, which pertains to the appointment of a special master, because that rule is inapplicable here.

8. In another issue on appeal, plaintiffs contend that the district court failed to conduct the requisite *de novo* review, which § 636(b)(1) mandates only where the district court employs subparagraph (B), not (A).

der a "clearly erroneous or contrary to law standard"). It is unclear whether § 636(b)(1)(B) permitted the district court to refer plaintiffs' motion for the imposition of sanctions to the magistrate judge as that kind of motion is not "excepted in subparagraph (A)" or elsewhere referenced in § 636(b)(1)(B).[9] Nevertheless, § 636(b)(3), a catch-all provision, states that a district court may assign a magistrate judge any additional duties that do not violate the Constitution or federal law. Because the district court could have designated the magistrate judge to *determine* the sanctions motion under subparagraph (A), the district court, under the syllogism of the greater power including the lesser power, could properly designate the magistrate to make a non-binding recommendation on that motion. *See Homico Constr. & Dev. Co. v. Ti-Bert Sys., Inc.*, 939 F.2d 392, 394 n. 1 (6th Cir.1991) (assuming that a district court referred a Rule 11 motion to a magistrate judge under § 636(b)(3)).

■ Plaintiffs argue that the district court committed reversible error by failing to make a *de novo* determination of those portions of the magistrate judge's Report and Recommendation to which plaintiffs objected, as § 636(b)(1) requires. In particular, plaintiffs claim that the district court's determination was not *de novo* because the court reviewed only the Report and Recommendation, not the underlying evidence, such as transcripts, affidavits, depositions, and mortgage documents. Presumably, plaintiffs draw this inference from the bare fact that the district court adopted the magistrate judge's Report and Recommendation only one day after plaintiffs filed their objections to it. However, in its order adopting the Report and Recommendation, the district court explicitly stated that it had reviewed both

the report as well as the objections to it. Even though the district court's order did not expressly state that the court conducted the requisite *de novo* review, we presume that the district court did so because there is no persuasive indication otherwise. *See Ivy v. Sec'y of Health and Human Servs.*, 976 F.2d 288, 289 (6th Cir.1992) (holding that, regarding social security appeals, appellate court assumes, absent circumstances showing otherwise, that the district court fulfilled its statutory duty to make a *de novo* determination of those parts of the magistrate's report to which a party objected where the district court did not expressly state that it did so); *Segines v. United States*, 201 F.3d 441, 1999 WL 1253099, at *2 (6th Cir.1999) (applying *Ivy's* presumptive rule in the habeas corpus context). Because the district court plausibly could have discharged its statutory duty in the one day between which it received the parties' objections to the report and issued its order, this length of time alone is insufficient to rebut the presumption that the district court made a *de novo* determination. Plaintiffs' suggestion that the district court had a duty to conduct an evidentiary hearing as part of its *de novo* determination likewise fails. *See* 28 U.S.C. § 636(b)(1) (providing that, in conducting its *de novo* determination of those parts of the report to which a party objected, "the judge *may* also receive further evidence") (emphasis added); *Raddatz*, 447 U.S. at 676, 100 S.Ct. 2406 (holding that, in conducting the *de novo* determination that § 636(b)(1)(B) requires, the district court need not conduct a *de novo* hearing because Congress, which intentionally used the word *determination* rather than *hearing*. "intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a

**9.** Plaintiffs have neither raised nor briefed this specific issue on appeal.

magistrate's proposed findings and recommendations").

### 1. Appeals of Summary Judgment

#### a. Claims to which Federal Law Applies

Plaintiffs appeal the district court's award of summary judgment for SBA on each of their claims. We review the district court's order granting summary judgment *de novo*. *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir.1999). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A "material" fact is one "that might affect the outcome of the suit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine" issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* We must believe the non-moving party's evidence, and draw all justifiable inferences in his favor. *Id.* at 255, 106 S.Ct. 2505. Moreover, we must view the inferences that we draw from those underlying facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

■ Plaintiffs appeal the district court's award of summary judgment to SBA on plaintiffs' claim that SBA violated plaintiffs' due process rights by foreclosing upon plaintiffs' mortgage via Michigan's advertisement procedure without a prior hearing. We agree with the district court that, as a matter of law, plaintiffs received all of the due process that the Fifth Amendment requires, even if the Due Process Clause were to apply, and we, thus, adopt the district court's reasoning.

Plaintiffs allege neither that SBA's notice of advertisement was defective under Michigan law nor that Michigan law's provision of foreclosure by advertisement is itself unconstitutional. *See Cheff v. Edwards*, 203 Mich.App. 557, 513 N.W.2d 439, 441 (Mich.Ct.App.1994) (upholding Michigan's statute permitting foreclosure by advertisement as constitutional.). Plaintiffs contend neither that the foreclosure by advertisement provided inadequate notice nor that they did not have actual notice of the foreclosure. Rather, plaintiffs maintain merely that they had no opportunity to be heard before the foreclosure. In determining the process that the Due Process Clause requires in a particular circumstance, we must consider these three factors: 1) the private interest that the governmental action affects; 2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and 3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *accord Gilbert v. Homar*, 520 U.S. 924, 930–32, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997) ("[D]ue process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place[,] and circumstances"; rather, it "is flexible and calls for such procedural protections as the particular situation demands.") (internal quotation marks omitted). As to the first factor, plaintiffs clearly have a strong interest in keeping their home. As to the third factor, the SBA has an equally strong interest in ensuring the solvency of the SBA program by being able to collect defaulted loans efficiently. Nevertheless, the second fac-

tor breaks this balance and weighs in SBA's favor. The risk of an erroneous deprivation of property here is minimal because a foreclosure occurs only after a default triggers the mortgagee's power of sale and the mortgagor retains the power to redeem the mortgage under state law. Additionally, plaintiffs have had many chances to discuss the defaulted mortgage with the SBA and to attempt to arrive at a compromise.[10] Thus, assuming *arguendo* that the Fifth Amendment's Due Process Clause were to apply here, plaintiffs received all of the process that was "due."

Plaintiffs appeal the district court's award of summary judgment to SBA on plaintiffs' claim that SBA denied plaintiffs equal protection of the law by requiring plaintiffs to pay the full loan amount while accepting compromise settlement offers less than the full loan amount from white SBA borrowers. In particular, plaintiffs contend that they created a genuine issue of material fact as to whether they were similarly situated to these white borrowers. Because case law affords little guidance as to how to apply the equal protection doctrine to the government's settlement of claims, the district court relied on *Bunce v. United States*, 28 Fed. Cl. 500, 509–10 (1993), *aff'd*, 26 F.3d 138, 1994 WL 118048 (Fed. Cir.1994), in which the Court of Federal Claims established an equal protection framework in the context of the Internal Revenue Service's settlement of tax claims. Following *Bunce*, to prevail on their equal protection claim, plaintiffs

here must show both that: 1) other similarly situated borrowers have received more favorable treatment; and 2) the SBA intentionally singled out plaintiffs based on their race.[11] *See id.* We note that an SBA obligor has no right to comprise, but, rather, the SBA retains full discretion to collect on claims, including the power of compromise and settlement. *See* 15 U.S.C. § 634(b). Of course, the SBA cannot exercise its discretion in a manner that violates equal protection principles.

■ Here, we agree with the district court that plaintiffs have failed to show a genuine issue of material fact regarding whether they were similarly situated to white borrowers.[12] Relying upon their statistics regarding three of SBA's white obligors, plaintiffs, on appeal, claim that the SBA permitted these white obligors to settle their defaulted loans in the amount of approximately 26% of their debt and 46% of their equity. However, we find the district court's conclusions on this issue to be correct and adopt them as our own. First, plaintiffs were not similarly situated with the borrowers of DryClean USA, whose $52,830 obligation the SBA compromised by accepting a $10,000 cash payment, representing approximately 19% of the debt. Plaintiffs secured their SBA loan with real property that they owned while the DryClean USA borrowers did not own the real estate that secured the SBA loan. Moreover, the SBA subsequently foreclosed on the realty securing

---

10. The SBA entertained five compromise offers from plaintiffs before the foreclosure and one additional offer after foreclosure.

11. Plaintiffs assert that the *Bunce* test upon which the district court relied and, in particular, its requirement of discriminatory animus is inapposite to plaintiffs' disparate impact theory grounded in SBA's discretionary settlement processes. However, the equal protec-

tion doctrine, unlike Title VII, requires purposeful discrimination. *Washington v. Davis*, 426 U.S. 229, 238–41, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976).

12. Our analysis likewise assumes, without deciding, that the SBA was acting in a governmental capacity so as to trigger the Fifth Amendment's equal protection component.

the DryClean USA loan. Second, plaintiffs are not similarly situated to the borrowers of Ekema's Card 'N' Craft, Inc., whose $87,348 obligation the SBA compromised by accepting a cash payment of $40,000, representing approximately 83% of the equity and 46% of the debt. The SBA determined that the amount of net equity on the property after foreclosure-about $23,900–would not be sufficient to warrant foreclosure. In contrast, plaintiffs had sufficient equity in their real property to satisfy the entire debt. Plaintiffs are not similarly situated to the borrowers of C & W Woodcrafters, whose $85,685 obligation from a second mortgage the SBA compromised by accepting a $10,000 cash payment equal to about 44% of the equity and 12% of the debt. The obligors of C & W Woodcrafters threatened bankruptcy. Foreclosure on the property would have entailed a first lienor payoff of $67,483, leaving a net equity of approximately $27,500. Alternatively, we agree with the district court that plaintiffs have failed to create a genuine issue of material fact that SBA's treatment of their compromise offers was based on racial animus. Plaintiffs have not refuted the SBA's evidence that the SBA denied plaintiffs' compromise offers for the following legitimate, financial reasons: 1) sufficient equity in plaintiffs' real property existed to satisfy the entire debt; 2) plaintiffs desired to remain in business and the SBA has a policy against settling in such circumstances; 3) plaintiffs' compromise offers were new promises of payment in lieu of old ones rather than cash offers; and 4) the SBA was concerned about plaintiffs' ability to pay on such new promises. Thus, summary judgment for the SBA was proper on plaintiffs' equal protection claim.[13]

 Plaintiffs appeal the district court's award of summary judgment to SBA on plaintiffs' claims regarding the validity of SBA's mortgage and the propriety of the foreclosure-claims one, three, and four-to the extent that they seek monetary damages on the ground that the doctrine of sovereign immunity bars such claims against the SBA, an agency of the federal government.[14] Plaintiffs contend that, because the SBA was not acting in a governmental capacity, but, rather, was acting in a proprietary capacity as a commercial lender, private contract law applies to the SBA. However, we agree with the district court that the doctrine of sovereign immunity bars any monetary claims against the SBA, adopting its reasoning. "Because the SBA is an agency of the United States, it enjoys sovereign immunity except to the extent waived, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *Campanella v. Commerce Exchange Bank*, 137 F.3d 885, 890 (6th Cir.1998) (internal quotation marks omitted). Here, the Federal Tort Claims Act (FTCA) is the only possible avenue through which plaintiffs could bring claims one, three, and four against the SBA.[15] The FTCA provides:

---

**13.** We need not address whether the district court properly granted summary judgment to the SBA on plaintiffs' due process and equal protection claims to the extent that they seek monetary damages. Plaintiffs did not appeal this issue. In any event, we find that summary judgment was proper on independent grounds.

**14.** The district court was uncertain whether plaintiffs are seeking monetary damages on these claims.

**15.** Although the Small Business Act provides that the SBA Administrator may "sue and be sued in any court of record[,]" 15 U.S.C. § 634(b)(1), this provision "does not establish a waiver of immunity so as to permit entertainment of [a] damages claim." *Ascot Dinner Theatre, Ltd. v. Small Business Admin.,*

[T]he district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, ... for injury or loss of property ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). However, the FTCA further provides that this section "shall not apply to ... [a]ny claim arising out of ... misrepresentation, deceit, or interference with contract rights[.]" 28 U.S.C. § 2680(h). Because plaintiffs' claims one, three, and four rely on plaintiffs' allegation regarding the fraudulently altered mortgage, they fall within an exception to the SBA's waiver of sovereign immunity and, thus, are barred.

b. Claims to which State Law Applies

 The district court held that Michigan law governs plaintiffs' claims concerning the validity of the mortgage and SBA's foreclosure on plaintiffs' property. See Butner v. United States, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) (observing that state law defines and creates property interests). Neither party contests this determination. Plaintiffs, in effect, appeal the district court's award of summary judgment for SBA on claim three, which sought injunctive relief preventing First Federal from foreclosing on and selling plaintiffs' property on the

ground that SBA's agreement to subordinate its interests to First Federal's was invalid. In particular, plaintiffs maintain that the SBA could not have subordinated an interest in the property that it did not, in fact, have and that SBA lacked any such interest because plaintiffs never executed the re-recorded mortgage, which was fraudulently altered. However, the district court properly granted summary judgment to the SBA on this claim as it fails as a matter of law. First, because plaintiffs have neither named First Federal as a defendant nor alleged that First Federal and the SBA are privies, a court lacks power to enjoin First Federal's foreclosure on plaintiffs' property. See Fed. R.Civ.P. 65(d) (An injunction is "binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise."); Chase Nat'l Bank v. City of Norwalk, Ohio, 291 U.S. 431, 436–37, 54 S.Ct. 475, 78 L.Ed. 894 (1934) (holding that "established principles of equity jurisdiction and procedure" require that an injunction may issue against individuals not named as defendants only where they are in privity with the defendant and where the court has adjudicated their rights "according to law"); Tesmer v. Granholm, 333 F.3d 683, 702–03 (6th Cir. 2003) (holding that Federal Rule of Civil Procedure 65(d) reflects the doctrine that an injunction may only issue against a third party to the action "if that party is identified with the named, enjoined party in interest, in 'privity' with it, represented

---

887 F.2d 1024, 1028 (10th Cir.1989). Rather, Congress has integrated § 634(b)(1)'s "sue and be sued" provision "within the overall scheme for allowing claims against the United States." Id. Therefore, it "does not alter the ... [Federal Tort Claims Act] as the exclusive remedy for actions sounding in tort." Id.; see

28 U.S.C. § 2679(a) ("The authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346(b) of this title, and the remedies provided by this title in such cases shall be exclusive.").

by it or subject to its control") (internal quotation marks omitted). Second, SBA's subordination agreement with First Federal has not prejudiced plaintiffs because it does not affect the existence of either SBA's mortgage or First Federal's mortgage but simply resolves which mortgagee has the first claim to the foreclosure's proceeds. *Oakes v. Michigan Oil Co.*, 476 So.2d 618, 622 (Ala.1985) (holding that the mortgagor's consent "is unnecessary to effect a change in the order of priority as between a mortgagee and ... another mortgagee"); 55 Am.Jur.2d *Mortgages* § 320 (2003) (same); Restatement (Third) of Prop.: Mortgages § 7.7 cmt. d (1997) (observing that, although no courts have specifically required the mortgagor's consent where the subordination agreement would materially prejudice him, some "courts have upheld such agreements only after ... [finding] no such prejudice").

Plaintiffs appeal the district court's award of summary judgment for SBA on claim one, which alleges that the SBA's foreclosure on plaintiffs' property was faulty because it was based upon a re-recorded mortgage that was altered without plaintiffs' authorization. In particular, plaintiffs contend that the district court committed reversible error when it upheld the execution of the re-recorded mortgage. However, the SBA ultimately withdrew from its summary judgment motion the argument that the plaintiffs had authorized the amendment of the original mortgage. Thus, the district court clearly did not premise its award of summary judgment to SBA on this issue. Alternatively, we note that, although plaintiffs objected to the findings of the magistrate judge's Report and Recommendation regarding claim four, which concerns the mortgage's allegedly defective *acknowledgment,* plaintiffs likely waived any appellate review regarding the validity of the mortgage's *execu-*

*tion* by not specifically objecting to that issue. *See Smith,* 829 F.2d at 1373.

■■■ Plaintiffs further appeal the district court's award of summary judgment for SBA on claim one to the extent that the district court held that, regardless of whether the plaintiffs had authorized the amendment of the original mortgage, plaintiffs had ratified the amended mortgage. In particular, plaintiffs contend that they could not have ratified the amended mortgage because they had neither the intent to ratify it nor a full knowledge of all the material facts at the time of the alleged ratification. Plaintiffs further maintain that, at a minimum, there is a genuine issue as to whether plaintiffs ratified the amended mortgage. However, in 1994, when the SBA agreed to subordinate its loan so that the plaintiffs could receive an additional line of credit, plaintiffs expressly "ratif[ied] and affirm[ed] all obligations set forth in any and all documents, including ... mortgages ... executed in regard to the loan[.]" Thus, regardless of whether plaintiffs authorized the amendment of the original mortgage, plaintiffs, as a matter of law, explicitly ratified the amended mortgage when they entered into this subordination agreement. Plaintiffs' subsequent ratification of the amended mortgage renders that mortgage valid and enforceable even if it would not have been enforceable before such ratification. *See Heathscott v. NBD Bank,* No. 206575, 1999 WL 33441302, at *2–3 (Mich.Ct.App. June 8, 1999) (per curiam) (holding that, despite her purported ignorance, plaintiff ratified a fraudulently executed mortgage, rendering it valid and enforceable, when she signed an amendment that referenced and affirmed that mortgage).

Plaintiffs' contention that they were unaware of the amendments to the mortgage does not undermine this conclusion. Michigan law "presumes that one who signs a

**126**

written agreement knows the nature of the instrument so executed and understands its contents." *McKinstry v. Valley Obstetrics–Gynecology Clinic,* 428 Mich. 167, 405 N.W.2d 88, 96 (Mich.1987); *see also Watts v. Polaczyk,* 242 Mich.App. 600, 619 N.W.2d 714, 717 (Mich.Ct.App.2000) (holding that mere failure to read a written agreement is no defense to an action to enforce that agreement's terms). Likewise, "[w]here one writing references another instrument for additional contract terms" so that "the two writings should be read together," *Forge v. Smith,* 458 Mich. 198, 580 N.W.2d 876, 881 (Mich.1998), Michigan law presumes that a party who signs that written agreement understands the nature of any documents which that agreement references. *See Heathscott,* 1999 WL 33441302, at *3–4 (holding that a party's failure to "obtain an explanation of a contract is ordinary negligence ... [that] estops the party from avoiding the contract on the ground that the party was ignorant of the contract provisions"). Thus, as the district court correctly found, plaintiffs cannot successfully claim that they were ignorant of the amended mortgage where that executed document was duly recorded and where plaintiffs expressly ratified it. Plaintiffs also argue that courts should not enforce a contract that stems from or is connected with an illegal or immoral act. Under Michigan law, however, "[r]atification is prohibited as a matter of law only where the *substance of the contract* at issue is violative of established public policy or the criminal law." *See id.* at *3 (emphasis added). Here, plaintiffs do not claim that the subject-matter of the agreement is illegal or against public policy, but, rather, that its manner of execution is. *See id.* at *3 n. 3 ("Mortgaging real estate does not violate Michigan law or public policy."). Thus, plaintiffs are bound by their free and voluntary ratification of the amended mortgage.

For the preceding reasons, we AFFIRM the district court's award of summary judgment for the SBA on all of plaintiffs' claims.

